UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ethel Warren & Christian Campos, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>I-Health, Inc.,<br><br>Defendant. | No. 2:23-cv-01926-KJM-AC<br><br>ORDER |

Defendant I-Health moves to dismiss plaintiffs Ethel Warren and Christian Campos's putative class action complaint based on alleged product misbranding, arguing plaintiffs lack constitutional and statutory standing, their claims are preempted by federal law and the complaint fails to state a claim for relief. Plaintiffs have opposed, and I-Health has replied. The court **grants** the motion to dismiss with prejudice.

I.  BACKGROUND

Plaintiffs' allegations concern two Products sold by defendant: Culturelle Probiotics Ultimate Balance for Antibiotics and Culturelle Kids Probiotics Ultimate Balance for Antibiotics ("Products"). *See* Mot. at 1, ECF No. 14; *see generally* Compl., ECF No. 1. Plaintiffs base their claims on California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), California's Consumer Legal Remedies Act ("CLRA"), Breach of Express Warranties

1

and Breach of Implied Warranty of Merchantability. *See* Compl. ¶¶ 65–103. Specifically, plaintiffs claim, "Defendant represents on its packaging that the Products 'Rebuild[] Bacterial Balance Lost to Antibiotic Use,' explicitly or implicitly claiming the Products are intended to be used as a drug to treat diseases like infections caused by antibiotics." Compl. ¶ 22. The description on the front of the box that the Products "Rebuild[] Bacterial Balance Lost to Antibiotic Use" includes an asterisk at the end. Mot. at 2.[1] The back of the box provides information marked with an asterisk, qualifying the front label description by explaining, in large capital letters and framed by a solid border, "*THESE STATEMENTS HAVE NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE OR PREVENT ANY DISEASE." *Id.* at 2. Defendant points out that, on its face, this language on the back of the package tracks statutory disclaimer language required for dietary supplements that do not need pre-approval from the federal agency. *See* 21 U.S.C. § 343(r)(6)(C) ("[A] statement for a dietary supplement may be made if . . . the statement contains, prominently displayed and in boldface type" that "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease."). Plaintiffs allege that the product descriptions are "illegal implied disease claims" that "are deceptive and violate federal regulations" because the claims preclude the defendant's ability to rely on the regulations' provisions for structure/function claims as opposed to the more stringent regulations applicable to disease claims. Compl. ¶¶ 20-22. Plaintiffs further allege they "would not have purchased the Products had they known the Products were unlawfully being mark[et]ed to mitigate, prevent, or

---

[1] Defendant includes with its motion a request for judicial notice of several product labels as well as a warning letter from the U.S. Food and Drug Administration. *See* Req., ECF No. 14-3. The request is unopposed. A court shall take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c)(2). Judicially noticed facts often consist of matters of public record. *See, e.g.*, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). Additionally, under the "incorporation by reference" doctrine, the court may take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation and marks omitted). Accordingly, the court grants defendant's request as to the product labels under the incorporation by reference doctrine and as to the Food and Drug Administration's warning letter under the public records exception.

treat certain diseases." *Id.* ¶¶ 30, 42, 51.  They say they paid a "premium price" for the Products and "suffered injury in fact and lost money." *Id.* ¶¶ 37, 43, 46, 52.

The complaint also alleges Warren and Campos "purchased the Products for" their "personal use on various occasions within the applicable statute of limitations," and "[a]lthough the Products were more expensive than other choices [they] viewed, [plaintiffs] chose to pay the premium price based upon the various claims and promises made by Defendant." *Id.* ¶¶ 36–37, 45–46.  Plaintiffs each allege they were "exposed to, saw, and relied upon Defendant's materially misleading misrepresentations on the Products' label and online which, viewed in their totality, implicitly or explicitly claim to mitigate and prevent disease." *Id.* ¶¶ 38, 47.  Plaintiffs also allege if they had "known the truth about Defendant's materially misleading representations and omissions, [they] would not have purchased the Products." *Id.* ¶¶ 42, 51.

Defendant argues the product description at issue is not a disease claim requiring advance FDA approval, but rather a permissible structure-function claim and that federal law preempts plaintiffs' claims.  Mot. at 4–18; *see* 21 C.F.R. § 101.93(f).

Defendant's motion is fully briefed.  *See* Mot.; Opp'n, ECF No. 16; Reply, ECF No. 19.  Defendant submitted a notice of supplemental authority, which the court has reviewed.  *See* Notice, ECF No. 30; Suppl. Authority, Notice Ex. A, ECF No. 30-1.  The court submitted the motion without a hearing.  *See* Min. Order, ECF No. 22.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Standing is a threshold component of the court's subject matter jurisdiction; if a plaintiff lacks standing, the court lacks jurisdiction.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1).  Lack of standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)[.]" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A plaintiff possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To establish an injury in

fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and marks omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (alteration omitted) (citing Black's Law Dictionary 479 (9th ed. 2009)). The standing requirements for UCL and FAL claims are identical: a private citizen must have "suffered injury in fact and . . . lost money or property as a result of the [alleged] unfair competition" or false advertising. Cal. Bus. & Prof. Code §§ 17204, 17535; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321 (2011) ("Proposition 64 made identical changes to the standing provision[s] of [the UCL and] the false advertising law[.]"). The CLRA creates a private right of action for "[a]ny consumer who suffers any damage as a result of" an unlawful practice specified by the Act. Cal. Civ. Code § 1780(a). As with the UCL and FAL, the CLRA's wording —"as a result of" —imposes reliance as a standing requirement when the claim involves false advertising. *See Princess Cruise Lines, Ltd. v. Superior Ct.*, 179 Cal. App. 4th 36, 46 (2009) (alteration omitted); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366-67 (2010) (alteration omitted). Courts have interpreted the reliance requirement of all three statutes similarly. *See Kwikset*, 51 Cal. 4th 310 at 326 (clarifying the "as a result of" language in CLRA "mirrors" the causation language added by Proposition 64 to the unfair competition and false advertising laws); *see also Durrell*, 183 Cal. App. 4th at 1359-67; *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-01044, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (jointly analyzing standing under UCL, FAL and CLRA), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).

**B.    Rule 12(b)(6)**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8. *Id.*

4

1  at 679.  This evaluation of plausibility is a context-specific task drawing on "judicial experience
2  and common sense."  *Id.*

### III.     ANALYSIS

Defendant argues the back label of the Products disclaims the precise misrepresentation plaintiffs allege.  *Compare* 21 U.S.C. § 343(r)(6) *with* Mot. at 2, 15 ("*THESE STATEMENTS HAVE NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION.  THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE OR PREVENT ANY DISEASE.").  They argue plaintiffs "do not identify what 'certain diseases' the Products purport to treat, beyond a vague reference to 'diseases like infections caused by antibiotics,'" Mot. at 3 (citing and quoting Compl. ¶¶ 22, 30), do not "allege they used the Products to treat any such diseases," *id.*, and "do not allege the Products fail to do exactly what the labels say they will do: 'Rebuild[] Bacterial Balance Lost to Antibiotic Use,'" *id.* (citing and quoting Compl. ¶¶ 4, 22). The court first decides the standing issue and then turns to the preemption issue by determining if the claim is a structure/function claim and whether it meets the statutory requirements to exempt it from therequirement ofo pre-approval by the federal agency.  *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 809 (9th Cir. 2020).

### A.     Standing

Defendant argues the complaint does not plead a concrete injury under Article III so as to establish standing.  *See* Mot. at 4–7.  Instead, defendant claims plaintiffs "merely allege in a conclusory fashion that they 'suffered injury in fact and lost money' by 'purchasing [] falsely advertised Products.'"  *Id.* (citing and quoting Compl. ¶¶ 43, 52).  The state law requirement for standing, requiring an economic injury, is more exacting than federal law standing.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 & n.3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).  As a result, federal standing is established if standing under the state law claims is established.  *Kwikset*, 51 Cal. 4th at 324–27.

Here, plaintiffs allege: (1) they purchased the Products on specific occasions from specific sellers; (2) the front of the packaging states the Products "Rebuild[] Bacterial Balance Lost to Antibiotic Use[*;]" (3) this claim is deceptive; (4) plaintiffs saw and relied on the product

5

1    description preceding the asterisk when purchasing the Products; and (5) plaintiffs would not
2    have bought the Products otherwise. *See* Compl. ¶¶ 21, 22, 30, 42, 38, 47, 51; *Kwikset*, 41 Cal.
3    4th at 327–28. These allegations are sufficient to establish state law statutory standing and
4    federal law standing at the pleading stage. *See Kwikset*, 41 Cal. 4th at 327–28 (finding similar
5    factual allegations established state and federal standing regarding a misrepresentation claim).
6    Accordingly, plaintiffs have constitutional and statutory standing.

## B. Preemption

Defendant also argues plaintiffs' claims are preempted by federal law. Plaintiffs claim the Products' marketing makes a "disease claim," which requires them to undergo greater scrutiny and regulation as drugs by the Food and Drug Administration ("FDA"), which the Products have not undergone. *See* Opp'n at 7. They allege the Products are probiotics meant to treat diseases "like infections caused by antibiotics." Compl. ¶¶ 22, 27, 80, 86, 87, 94. Defendant, on the other hand, argues the Products' labeling makes a "structure/function" claim, which is permitted for use with dietary supplements that do not need pre-approval, such as the Products, and does not meet the definition of a "disease claim." *See* Mot. at 7–13. Defendant argues the label on the front of the Products "describes the role of the probiotic supplements[] in rebuilding normal bacterial balance lost, not due to any disease condition, but to a *temporary* state that may be experienced due to the use of antibiotics." *See* Mot. at 8 (emphasis in original).

The Federal Food, Drug and Cosmetic Act ("FDCA") provides the FDA with limited authority to regulate supplements. "Unlike with drugs, the FDA does not pre-approve product labels for dietary supplements. It, however, requires that the labels be truthful and not misleading[,] and authorizes several categories of statements that can be made on the product if certain requirements are met." *See Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. Jan. 13, 2021) (citing 21 U.S.C. § 343(r)(6)(B)). A disease claim is a "statement about a product [that] claims to diagnose, mitigate, treat, cure, or prevent disease[.]" 21 C.F.R. § 101.93(g)(2). A structure/function claim, however,

> claims a benefit related to a classical nutrient deficiency disease and
> discloses the prevalence of such disease in the United States,

6

>describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient[.]"

21 U.S.C.A. § 343(r)(6)(A). In other words, disease claims imply or explicitly state the product can cure or treat a disease, whereas structure/function claims clarify the function or role an ingredient or nutrient has in the human body. Here, the Products' front label states, "Rebuild[] Bacterial Balance Lost to Antibiotic Use," Mot. at 2; Compl. ¶ 22. The FDA's regulations help define structure/function claims, by identifying general terms these claims may use, such as "strengthen," "improve," and "protect," with the understanding the claims may "not suggest disease prevention or treatment." *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1028 (Jan. 6, 2000) (codified at 21 C.F.R. pt. 101). This court finds "rebuild" to be similar in generality and meaning to the verbs identified by the FDA, specifically to "strengthen." Moreover, claiming to rebuild bacterial balance—or good bacteria—in the body is a claim about the impact of the supplement on the structure of the body, without mention of any diseases the supplement could help treat. *See Kroessler*, 977 F.3d at 810 (finding product claim to be a structure/function claim when it stated, "support for cardiovascular health (facially a structure/function claim)" withoutclaiming to prevent a cardiovascular disease (alteration and citations omitted)). Having identified the contested claim as a structure/function claim, the court next turns to determining whether the claim meets the requirements to forego pre-approval.

There are three statutory requirements for structure/function claims that do not need pre-approval from a federal agency:

>1. The manufacturer must have substantiation that the statement is truthful and not misleading;
>
>2. The statement must contain a prominent disclaimer that the FDA has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and

7

       3. The statement itself may not "claim to diagnose, mitigate, treat, cure, or prevent" disease.

*See Greenberg*, 985 F.3d at 655 (citing 21 U.S.C. § 343(r)(6)).

       The FDCA has a preemption provision that covers structure/function claims and "preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements." *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 848 (9th Cir. 2019); 21 U.S.C. § 343-1(a)(5). "[I]f the defendants' [product description] meets the FDCA's three requirements for a structure function claim, then any state law claims challenging that claim fall to the wayside." *See Greenberg*, 985 F.3d at 655. The court thus assesses whether defendant's labeling of the Products meets each requirement of a structure/function claim.

       **1.     Product Description Substantiated and Truthful**

       Plaintiffs do not dispute that probiotics can help rebuild healthy bacteria loss after antibiotic use. *See generally* Opp'n. Plaintiffs, however, do not appear to concede substantiation and truthfulness because they claim the products and their descriptions seek to treat diseases, "like infections caused by antibiotics." *Id.* at 1. Plaintiffs' claim regarding truthfulness hinges on the front label description being read alone, without reference to the back of the label, *see* Compl. ¶¶ 21–22, which plaintiffs argue makes clear the products are not intended to treat diseases.

       In the opposition, plaintiffs take issue with a front-back label dichotomy, where a description on the front of a package has an asterisk and is qualified on the back of the package with additional details identified by a corresponding asterisk. *See* Opp'n at 14–15 (arguing Ninth Circuit has rejected premise that a reasonable consumer should necessarily be expected to look at a back label, in response to defendant's argument that the asterisk created sufficient ambiguity to warn a reasonable consumer they should review back label). But Ninth Circuit case law "require[s] only that a front label be plausibly misleading for a plaintiff to survive dismissal" under the reasonable consumer standard of California's UCL, FAL and CLRA. *Whiteside v. Kimberly Clark Corp.*, 108 F. 4th 771, 781 (9th Cir. 2024). "[I]f the front label is ambiguous, then we must look to the back label" and consider whether the front label could be plausibly misleading when reading the front and back label in conjunction with one another. *Id.* at 780.

1    Here, a reasonable consumer could interpret the description on the front of the Products'
2    packaging—"Rebuild[] Bacterial Balance Lost to Antibiotic Use*"—as ambiguous, if for no
3    other reason than the use of the asterisk after the description, which "alone puts a consumer on
4    notice that there are qualifications or caveats[.]" *Id.* at 785 (citing *Bobo v. Optimum Nutrition,*
5    *Inc.*, No. 14-2408, 2015 WL 13102417, at *5 (S.D. Cal. Sep. 11, 2015)). "Plaintiff cannot simply
6    look to the statement on the front panel, ignore the asterisk, and claim he has been misled." *Id.* at
7    785; *see* Mot. at 2; *Robles v. GOJO Indus., Inc.*, No. 22-55627, 2023 WL 4946601, at *1 (9th Cir.
8    Aug. 3, 2023) (citations omitted) (holding plaintiff "fail[ed] to state a claim because she did not
9    plausibly allege that the front label is literally false or that the front label [with the asterisk], as
10   clarified by the back label, is false or misleading"). And as noted, the statement on the Products'
11   back label, qualifying the description on the front label, faithfully tracks the FDA's technical
12   language to clarify the Products are not a drug that treats diseases. *See* Mot. at 2.

13   Plaintiffs argue the use of the asterisk and qualifying language on the back label are not
14   sufficient for the court to accept defendant's arguments regarding the truthfulness aspect of this
15   element of a structure/function claim. *See* Opp'n at 14. Plaintiffs argue "[t]he Ninth Circuit has
16   rejected the premise that 'reasonable consumers should be expected to look beyond misleading
17   representations on the front of the box to discover the truth from the . . . small print on the side of
18   the box." *Id.* (citations omitted). However, plaintiffs make only conclusory allegations, thereby
19   failing to adequately plead the product description on the front label is a "misleading
20   representation" or contradicts the back label description. *Whiteside*, 108 F.4th at 778, 782.
21   Furthermore, Ninth Circuit case law since *Williams* has clarified the use of an asterisk can create
22   ambiguity and allow the back label print to be considered with the front label print. *See id.* at
23   785; *see also* Mot. at 14–16. Thus, the front label description can be considered together with the
24   back label qualifying statement, and together the two can show it is unlikely a reasonable
25   consumer will be deceived by the packaging as a matter of law, given Ninth Circuit precedent.
26   *See Whiteside*, 108 F.4th at 785 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th
27   Cir. 2008)); *Greenberg*, 985 F.3d at 656. As a result, defendant has established truthfulness.

#### 2.     **Label has Required Disclaimer**

Structure/function claims must contain a disclosure that the "statement has not been evaluated by the Food and Drug Administration" and the "product is not intended to diagnose, treat, cure, or prevent any disease." 21 U.S.C.§ 343(r)(6)(C); *see* Mot. at 2.  As reviewed above, the required disclaimer appears on the back label of the Products and, as a result, the second requirement is met.  *See id.*

#### 3.     **Product Does Not Claim to Treat Diseases**

The third requirement is that the statement does not "claim to diagnose, mitigate, treat, cure or prevent a specific disease or class of diseases" 21 U.S.C.§ 343(r)(6).  As explained above, the label includes an express disclaimer tracking this language, stating the "product is not intended to diagnose, treat, cure, or prevent any disease," and the front label description of the Products does not suggest otherwise by stating the supplement "Rebuilds Bacterial Balance Lost to Antibiotic Use," which suggests a strengthening function in the body's digestive system. *See* Mot. at 2; *Robles*, 2023 WL 4946601, at *1.

Because the Products' labeling meets the three requirements of a structure/function claim, defendant cannot be subjected to additional requirements and standards for their labeling under state law. *See Greenberg*, 985 F.2d at 657.  The court concludes the Products' descriptions are permissible structure/function claims under the FDCA that do not need pre-approval from the federal agency, and the FDCA preempts plaintiffs' state law claims.

### C.     **Dismissal with Prejudice**

Plaintiffs ask the court for leave to amend if the court grants the motion to dismiss, which it has. *See* Opp'n at 17 & n.7.  "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted).  Plaintiffs' allegations regarding defendant's descriptions of the Products do not state a claim, based on the descriptions themselves as properly considered by the court.  Given the language of the FDCA

and the language on the Products' packaging, plaintiffs would not be able to amend their complaint to support their claims with different allegations.  Granting leave to amend would be futile.  *See Aquino v. Cal. Reconveyance Co.*, No. 14-01818, 2014 WL 5494446, at *5 (N.D. Cal. Oct. 30, 2014) (denying leave to amend when all claims were precluded).  The court declines to grant plaintiffs leave to amend their complaint.

**IV.     CONCLUSION**

The court **grants** defendant's motion to dismiss and dismisses plaintiffs' complaint **with prejudice**.  The court **vacates** all dates and deadlines.  The Clerk of Court is directed to **close this case**.

This order resolves ECF No. 14.

IT IS SO ORDERED.

DATED:  September 16, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE